ELDON S. EDSON (SBN CA 168896)
eedson@selmanlaw.com
LAURA R. RAMOS (SBN CA 186326)
lramos@selmanlaw.com
SELMAN BREITMAN LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6546
Telephone:  310.445.0800
Facsimile:   310.473.2525

Attorneys for Plaintiff,
CRESTBROOK INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CRESTBROOK INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>DYLAN SELLERS and LILY SELLERS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1. DECLARATORY JUDGMENT** (Duty to Defend)<br><br>**2. DECLARATORY JUDGMENT** (Duty to Indemnify) |

Plaintiff, CRESTBROOK INSURANCE COMPANY ("Crestbrook"), by and through its attorneys of record, alleges as follows:

1. In this action, Plaintiff, Crestbrook Insurance Company, seeks declaratory relief concerning its obligations, if any, to provide insurance coverage to Dylan Sellers and Lily Sellers.

## PARTIES

2. Plaintiff, Crestbrook Insurance Company, is an insurance company incorporated in the state of Ohio with its principal place of business in Columbus, Ohio.

3. Defendant, Dylan Sellers, is an individual who resides in Los Angeles County, California.

1

COMPLAINT

3380 101106 4857-3272-3205 .v1

4.      Defendant, Lily Sellers, is an individual who resides in Los Angeles County, California.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendant in the action, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, in that the insurance coverage at issue involves insureds who reside in Los Angeles County, California and a claim which arose in Los Angeles County, California which is in this district and judicial division.

## THE CLAIM

7.      On July 23, 2021, Lily Sellers was involved in an auto accident in Los Angeles County while driving an auto owned by her father, Dylan Sellers.

8.      The auto involved in the accident is a 2019 Volkswagen Jetta ("the Jetta.")

9.      Dylan Sellers purchased the Jetta on or about October 2020.

10.     Lily Sellers is over the age of 18, not a student, and was not residing at Dylan Sellers' residence at the time of the accident.

11.     It is alleged that Lily Sellers struck two pedestrians while driving the Jetta.

12.     A claim has been made by two pedestrians who allege they were struck and injured by Lily Sellers while she was driving the Jetta ("the Claim.")

## THE POLICY

13.     Crestbrook issued a Personal Excess Liability policy to Dylan Sellers and Michelle Johnston with policy No. PX00006272 for the policy period 10/10/20 – 10/10/21 ("the Crestbrook Policy.") A certified copy of the Crestbrook Policy is attached as Exhibit 1.

2

COMPLAINT

3380 101106 4857-3272-3205 .v1

Selman Breitman LLP
ATTORNEYS AT LAW

14.     Lily Sellers is not a named insured on the Crestbrook Policy.

15.     The Crestbrook Policy includes certain coverages for the use of Motor Vehicles pursuant the terms of the policy.

16.     The Jetta is not listed in the Schedule of Underlying Insurance on the Crestbrook Policy. See, Crestbrook Policy, Exhibit 1, page 4.

17.     The Crestbrook policy states in part:

**Schedule of Underlying Insurance**

**Residences Premises**

| Location | No. of Families | Insuring Company |
|---|---|---|
| 1.   … Manhattan Beach, CA | 1 | Crestbrook Insurance Company |

**Private Passenger Autos, Motorcycles and Licensed Recreational Vehicles**

| Description | Insuring Company |
|---|---|
| 1.     2014 Tesla S | Progressive |

See, Crestbrook Policy, Exhibit 1, Page 4.

18.     The Jetta is insured by Progressive Insurance.

19.     The Progressive insurance policy lists Lily Sellers as a driver.

20.     The Crestbrook Policy states that an insured must notify Crestbrook of a newly acquired Motor Vehicle within thirty days of purchase, and that after notification, Crestbrook reserves the right to refuse coverage for that Motor Vehicle. The Crestbrook Policy states in part:

d.     Newly Acquired Motor Vehicles and Watercraft

(1)     We cover Damages an Insured is legally obligated to pay for Bodily Injury or Property Damage caused by an Occurrence resulting from newly acquired Motor Vehicles, providing you give us notice within thirty (30) days after you become the owner. We reserve our right not to continue to

3

COMPLAINT

3380 101106 4857-3272-3205 .v1

insure the Motor Vehicle once notified.
See, Crestbrook Policy, Exhibit 1, Page 18.

21. Crestbrook was not notified that Dylan Sellers had a newly acquired Motor Vehicle, the Jetta, within 30 days of him becoming the owner of the Jetta.

22. Dylan Sellers became the owner of the Jetta on or about October 2020.

23. Crestbrook was first notified that Dylan Sellers had a newly acquired Motor Vehicle on or about September 24, 2021, when Crestbrook received notice of the Claim.

24. Crestbrook was first notified that Dylan Sellers has a newly acquired Motor Vehicle eleven months after Dylan Sellers became the owner of the Jetta, and two months after the accident giving rise to the Claim.

25. For the Personal Excess Liability policy at issue, Crestbrook charges a monetary premium for newly acquired Motor Vehicles.

26. As Crestbrook was never notified of the newly acquired Motor Vehicle before the accident, Dylan Sellers was not charged a premium to add the Jetta to the Crestbrook Policy.

## FIRST CAUSE OF ACTION

## (DECLARATORY RELIEF – NO DUTY TO DEFEND)

27. Crestbrook incorporates the previous allegations as though fully set forth herein.

28. Crestbrook asserts that the Claim involving the Jetta is not covered by the Crestbrook policy as Crestbrook was not notified that Dylan Sellers became the owner of the Jetta within thirty days of his ownership and was not notified of the newly acquired Motor Vehicle until after the accident.

29. Crestbrook asserts it owes no coverage obligation arising from the Claim including the duty to defend to Dylan Sellers or Lily Sellers.

30. Crestbrook is informed and believes that Dylan Sellers and Lily

4

3380 101106 4857-3272-3205 .v1

Selman Breitman LLP
ATTORNEYS AT LAW

Sellers dispute Crestbrook's assertion that there is no coverage for the Claim.

31. Thus, there presently exists a justiciable controversy between the parties as to the rights and obligations of Crestbrook and the Defendants regarding insurance coverage for the Claim. Under 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

32. Crestbrook seeks a declaration from the court that it owes no duty to defend Dylan Sellers or Lily Sellers regarding the Claim.

## SECOND CAUSE OF ACTION

## (DECLARATORY RELIEF – NO DUTY TO INDEMNIFY)

33. Crestbrook incorporates the previous allegations as though fully set forth herein.

34. Crestbrook asserts that the Claim involving the Jetta is not covered by the Crestbrook policy as Crestbrook was not notified that Dylan Sellers became the owner of the Jetta within thirty days of his ownership and was not notified of the newly acquired Motor Vehicle until after the accident.

35. Crestbrook asserts it owes no coverage obligation arising from the Claim including the duty to indemnify Dylan Sellers or Lily Sellers.

36. Crestbrook is informed and believes that Dylan Sellers and Lily Sellers dispute Crestbrook's assertion that there is no coverage for the Claim.

37. Thus, there presently exists a justiciable controversy between the parties as to the rights and obligations of Crestbrook and the Defendants regarding insurance coverage for the Claim. Under 28 U.S.C. § 2201(a), the Court may and should declare the rights of the parties with respect to this controversy.

38. Crestbrook seeks a declaration from the court that there is no duty to indemnify Dylan Sellers or Lily Sellers regarding the Claim.

/ / /

/ / /

5

COMPLAINT

3380 101106 4857-3272-3205 .v1

## **PRAYER FOR RELIEF**

WHEREFORE, Crestbrook prays for relief:

A.    A declaration that Crestbrook owes no duty to defend defendants for the Claim.

B.    A declaration that Crestbrook owes no duty to indemnify the defendants for the Claim.

C.    Costs of suit.

D.    Any other relief the court deems appropriate.

Respectfully Submitted,

DATED: January 10, 2022        SELMAN BREITMAN LLP


By: /s/ Laura R. Ramos
      ELDON S. EDSON
      LAURA R. RAMOS
Attorneys for Plaintiff,
CRESTBROOK INSURANCE COMPANY

Selman Breitman LLP
ATTORNEYS AT LAW

6

COMPLAINT

3380 101106 4857-3272-3205 .v1

# EXHIBIT 1

DocuSign Envelope ID: 6864EEB7-BA3B-4CD5-895E-236DE03D7BE1

**Private Client**

I, McKenzie Talib, as a duly authorized Nationwide associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify that this copy of PX00006272 was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

| | |
|---|---|
| *McKenzie Talib* | September 27, 2021 |
| Signature | Date |

**Nationwide Private Client**
P.O. Box 4110 ● Scottsdale, AZ 85261-4110
8877 N. Gainey Center Dr. ● Scottsdale, AZ 85258
Phone: 855-473-6410
Fax: 480-365-5330

**Nationwide**
is on your side

**Private Client**

**Your Renewal Policy Declaration**
**Personal Excess Liability Policy**
Policy Number: PX00006272-07
Policy Period: 10/10/2020  to  10/10/2021

Dylan Sellers and Michelle Johnston
880 11th St
Manhattan Beach, CA 90266-4943

Hoffman Brown / CA003701
5000 Van Nuys Blvd Fl 6
Sherman Oaks, CA 91403-1859
(818) 986-8200

**General Policy Information**

**Issued: 08/26/2020**
These Declarations are a part of the policy named above and identified by the policy number above. They supersede any Declarations issued earlier. Your Personal Excess Liability Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the **other** coverages and additional coverage options.

**Policy Period From:** 10/10/2020  To: 10/10/2021  but only if the required premium for this period has been paid and only for annual renewal periods if premiums are paid as required.  Each period begins and ends at 12:01 A.M. standard time at your location address shown below.

**How You saved on this Policy with Nationwide Private Client**

Higher Underlying Coverage Credit

**Name of Insured and Location Address:**

Dylan Sellers and Michelle Johnston
880 11th St
Manhattan Beach, CA 90266-4943

| | | |
|---|---|---|
| **A. Personal Excess Liability Coverage Limit** | $ | 5,000,000 |
| **B. Excess Uninsured and Underinsured Liability Limit** | $ | 1,000,000 |
| **C.  Limited Employment Practices Liability Limit** | | |
|     **Annual    Aggregate** | $ | Not Applicable |
|     **Per Wrongful Employment Act** | $ | Not Applicable |
|     **Deductible** | $ | Not Applicable |

Underwritten by Crestbrook Insurance Company

U1501 (01-13)
Page 1



**Private Client**

**Your Renewal Policy Declaration**
**Personal Excess Liability Policy**
Policy Number: PX00006272-07
Policy Period: 10/10/2020  to  10/10/2021

| Required Underlying Insurance | | Minimum Required Underlying Limits |
|---|---|---|
| Personal Liability, Homeowners or Comprehensive Personal Liability | Bodily Injury/Property Damage Combined Single Limit | $300,000 each occurrence |
| Owners, Landlords and Tenants (Rental Units) | Bodily Injury/Property Damage Combined Single Limit | $300,000 each occurrence |
| Private Passenger Autos, Motorcycles and Licensed Recreational Vehicles | Bodily Injury and Property Damage | $250,000 BI each person $500,000 BI each accident $100,000 PD each accident |
| | or Combined Single Limit: | $300,000 each accident |
| Uninsured/Underinsured Motorist Protection | Bodily Injury | $250,000 BI each person $500,000 BI each accident |
| | or Combined Single Limit: | $300,000 each accident |
| Watercraft Up to 27 feet or 300 HP 27 to 45 feet or 300 or more HP 45 feet or greater Personal Watercraft | Combined Single Limit: | $300,000 each occurrence $500,000 each occurrence $1,000,000 each occurrence $500,000 each occurrence |
| Unlicensed Recreational Vehicles | Combined Single Limit: | $500,000 each occurrence |
| Employers Liability | Combined Single Limit: | $500,000 each occurrence |

**Premium Summary**

Policy Premium

| | | |
|---|---|---|
| Personal Excess Liability | $ | 543 |
|     Automobiles & Recreational Vehicles | | |
|     Personal Liability | | |
| Excess Uninsured/Underinsured Motorists | $ | 225 |
| Crestbrook Protection | $ | 300 |

Underwritten by Crestbrook Insurance Company

U1501 (01-13)
Page 2



**Private Client**

## Your Renewal Policy Declaration
**Personal Excess Liability Policy**
Policy Number: PX00006272-07
Policy Period: 10/10/2020  to  10/10/2021

**Total Policy Premium     $          1,068.00**

### Policy Form and Endorsements

G8021 (02-14)  Summary of Rights
G8000 (01-13)  Privacy statement - Crestbrook
G8018 (02-14)  Important Information for Califormia Policyholders
U1400 (02-14)  Personal Excess Liability Policy
U8010 (02-14)  Crestbrook Personal Excess Liability Protection
U8005 (02-14)  California Amendatory Endorsement

**Issued By:     Nationwide Private Client**

Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

### How to Contact Us

24-Hours claims Reporting:     855-473-6410

### Schedule of Underlying Insurance

#### Residences Premises

| Location | No. of Families | Insuring Company |
|---|---|---|
| 1. 880 11th St, Manhattan Beach, CA 90266-4943 | 1 | Crestbrook Insurance Company |

#### Private Passenger Autos, Motorcycles and Licensed Recreational Vehicles

| Description | Insuring Company |
|---|---|
| 1. 2014 Tesla S | Progressive |



CRESTBROOK INSURANCE COMPANY

## IMPORTANT INSURANCE INFORMATION
### SUMMARY OF RIGHTS

The laws of your state require that we provide you with this important notice regarding your rights in the event of an adverse underwriting decision.

### YOUR RIGHTS FOLLOWING AN ADVERSE UNDERWRITING DECISION

In the event of an adverse underwriting decision, you have certain rights available to you. An adverse underwriting decision may include, but is not limited to:

- A declination of insurance coverage;
- A termination of insurance coverage;
- Failure of an agent to apply for insurance coverage with a specific insurance institution that an agent represents and that is requested by an applicant;
- Placement by an insurance institution or agent of a risk with a residual market mechanism, an unauthorized insurer, or an insurance institution which specializes in substandard risk;
- The charging of a higher rate on the basis of information which differs from that which you furnished us.

You have the right to: 1) request in writing the specific reason(s) for the adverse underwriting decision; 2) request access to your recorded personal information; and 3) request correction, amendment, or deletion of your recorded personal information.

### YOUR RIGHT TO REQUEST THE SPECIFIC REASON(S) FOR AN ADVERSE UNDERWRITING DECISION

You have the right to request in writing the specific reason(s) for an adverse underwriting decision. In addition, you have the right to request specific items of information that support the action and the right to request the names and addresses of the institutional sources that supplied the specific information. However, this right does not extend to information if we have a reasonable suspicion that criminal activity, fraud, material misrepresentation, or material nondisclosure is involved or if specific items of medical-record information supplied by a medical care institution or medical professional shall be disclosed either directly to the individual about whom the information relates or to the medical professional designated by the individual and licensed to provide medical care with respect to the condition to which the information relates, whichever the insurance institution or agent prefers.

To receive this information, please submit a written request within ninety (90) business days from the receipt of this notice. We will respond within twenty-one (21) business days from the receipt of your request. At that time we will furnish you with:

1. the specific reason(s) for the adverse underwriting decision in writing if such information has not already been provided to you; and
2. the specific items of personal and privileged information that support the reasons; and
3. the names and addresses of the institutional sources that supplied the specific items of information specified.

### YOUR RIGHT TO REQUEST ACCESS TO YOUR RECORDED PERSONAL INFORMATION

You also have the right to submit a written request for access to your recorded personal information. We may charge a reasonable fee to cover the costs of providing you this information.

Within thirty (30) days of the receipt of your request, we will inform you of the nature and substance of the recorded personal information provided that it is reasonably described and is reasonably locatable and retrievable. You have the right to see and copy the recorded personal information in person or obtain a copy by mail, whichever you prefer.

We will also tell you the identity of the persons or organizations to whom we have disclosed the information in the preceding two (2) years and provide you with a summary of the procedures by which you may request correction, amendment, or deletion of recorded personal information.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2011

Medical-record information supplied by a medical-care institution or medical professional and requested in writing by you, together with the identity of the medical professional or medical-care institution that provided such information, shall be supplied either directly to the individual or to a medical professional designated by the individual and licensed to provide medical care with respect to the condition to which the information relates, whichever the insurance institution, agent, or insurance-support organization prefers. If it elects to disclose the information to a medical professional designated by the individual, the insurance institution, agent, or insurance-support organization shall notify the individual, at the time of the disclosure, that it has provided the information to the medical professional.

The obligations imposed by this section upon an insurance institution or agent may be satisfied by another insurance institution or agent authorized to act on its behalf. With respect to the copying and disclosure of recorded personal information pursuant to a written request by you, an insurance institution, agent, or insurance-support organization may make arrangements with an insurance-support organization or a consumer reporting agency to copy and disclose recorded personal information on its behalf.

### YOUR RIGHT TO REQUEST CORRECTION, AMENDMENT, OR DELETION OF RECORDED PERSONAL INFORMATION

If you disagree with our records, you have the right to request correction, amendment, or deletion of any recorded personal information.

Within thirty (30) business days of receipt of your written request, we will either:
1. correct, amend, or delete the portion of the recorded personal information in dispute; or
2. notify you of our refusal to make the correction, amendment, or deletion, the reasons for the refusal, and your right to file a statement if you disagree.

If we grant your request, we will notify you in writing and furnish the correction, amendment, or fact of deletion to:
1. any person specifically designated by you who may have, within the preceding two (2) years, received the recorded personal information;
2. any insurance support organization if the insurance support organization has systematically received such recorded personal information from us within the preceding seven (7) years; provided, however, that the correction, amendment or fact of deletion need not be furnished if the insurance support organization no longer maintains recorded personal information about you; and
3. any insurance support organization that furnished the personal information that has been corrected, amended or deleted.

In the event an individual files a concise statement setting forth what is believed to be correct, relevant, or fair information or a concise statement as to the reasons why the individual disagrees with the insurance institution's, agent's or insurance support organization's refusal to correct, amend or delete recorded personal information, the insurance institution, agent, or support organization shall:

1. File the statement with the disputed personal information and provide a means by which anyone reviewing the disputed personal information will be made aware of the individual's statement and have access to it; and
2. In any subsequent disclosure by the insurance institution, agent, or support organization of the recorded personal information that is the subject of disagreement, clearly identify the matter or matters in dispute and provide the individual's statement along with the recorded personal information being disclosed; and
3. Furnish the statement to the persons and in the manner described above. If we refuse your request and you are not satisfied, you may send us a concise statement setting forth what you believe is the correct, relevant, or fair information and why you disagree with our refusal to correct, amend, or delete recorded personal information. Your statement will be included with the disputed personal information in our records.

*If you have questions regarding this notice, please contact your company representative or write us at:*
Crestbrook Insurance Company
Attn: Customer Relations
18700  North  Hayden  Road
Scottsdale Arizona 85255

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2011

Private Client

# PRIVACY STATEMENT

**Thank you for choosing Crestbrook**

Our privacy statement explains how we collect, use, share, and protect your personal information. So just how do we protect your privacy? In a nutshell, we respect your right to privacy and promise to treat your personal information responsibly. It's as simple as that. Here's how.

**Confidentiality and security**

We follow all data security laws. We protect your information by using physical, technical, and procedural safeguards. We limit access to your information to those who need it to do their jobs. Our business partners are legally bound to use your information for permissible purposes.

**Collecting and using your personal information**

We collect information about you when you ask about or buy one of our products or services. The information comes from your application, business transactions with us, consumer reports, and publicly available sources. Please know that we only use that information to sell, service, or market products to you.

We may collect the following types of information:

- Name, address, and Social Security number

- Assets and income

- Property address and value

- Account and policy information

- Credit reports and other consumer report information

- Family member and beneficiary information

- Public information

**Sharing your information for business purposes**

We share your information with other Nationwide companies and business partners. When you buy a product, we may share your personal information for everyday business purposes. Some examples include mailing your statements or processing transactions that you request. You cannot opt out of these. We also share your information with your agent or producer. They use your personal information to manage your policy or account. We may also share your personal information as federal and state law requires.

**Sharing your information for marketing purposes**

We don't sell your information to anyone—period. We may share your personal information with Nationwide companies or business partners to market products to you. We have joint marketing agreements with our business partners. This means that we have partnered with them to offer you a product that might interest you. They may use your personal information to market their products. If you would like to learn more about opting out, please read the next section.

**Opting Out**

You can ask us not to share your personal information with the Nationwide family of companies listed below or our business partners to market products to you. Just remember, Nationwide offers many different types of products and services. If you would like to learn about these products from one of our companies, you may not want to opt out. You can opt out of sharing with other Nationwide affiliates and sharing with third parties.

To opt out of sharing for marketing purposes, please call us toll free at 1-866-280-1809. You may opt out at any time and your request will take effect in thirty (30) days. An opt out request from one joint customer will apply to all joint customers on the policy or account. If you have already opted out, you don't need to opt out again because your request will never expire.

We will not share the personal information of Vermont customers with the Nationwide family of companies or third parties for marketing purposes without your consent.

**Using your medical information**

We sometimes collect medical information. We may use this medical information for a product or service you're interested in, to pay a claim, or to provide a service. We may share this medical information for these business purposes if required or permitted by law. But we won't use it for marketing purposes unless you give us permission.

**Accessing your information**

You can always ask us for a copy of your personal information. Please send your privacy inquiry to the address below and have your signature notarized. This is for your protection so we may prove your identity. We don't charge a fee for giving you a copy of your information now, but we may charge a small fee in the future.

You can change your personal information at MyNationwide.com or by calling your agent. But we can't update information that other companies, like credit agencies, provide to us. So you'll need to contact these other companies to change and correct your information.

Send your privacy inquiries to the address below. Please include your name, address, and policy number. If you know it, include your agent's name and number.

Nationwide Insurance
Attn: Customer Relations—Privacy
One Nationwide Plaza, 3-04-101
Columbus, OH 43215

**A parting word…**

These are our privacy practices. They apply to all current, joint, and former clients of Nationwide Mutual Insurance Company, Nationwide Agents, and the affiliates and subsidiaries that offer auto, home, property, life insurance, banking services, and investments. This includes the following companies:

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company Nationwide General Insurance Company
Nationwide Insurance Company of America Nationwide Affinity Insurance Company of America
Nationwide Agribusiness Insurance Company Nationwide Sales Solutions, Inc.
Nationwide Insurance Company of Florida
Nationwide Lloyds
Nationwide Assurance Company Nationwide Securities, LLC Nationwide Life Insurance Company
Nationwide Bank
Nationwide Advantage Mortgage Company
Titan Holdings, Inc.
Colonial County Mutual Insurance Company
Insurance Intermediaries, Inc. Crestbrook Insurance Company

CRESTBROOK INSURANCE COMPANY

## IMPORTANT INFORMATION FOR CALIFORNIA POLICYHOLDERS

In the event you need to contact someone about this policy for any reason, please contact your agent first. If you have additional questions, you may contact the insurance company issuing this policy at the following address and telephone number:

**Crestbrook Insurance Company**
**18700 North Hayden Road**
**Scottsdale, Arizona 85255**
**Telephone: 1-855-423-7675**

If you have been unable to contact or obtain satisfaction from the company or agent, you may contact the California Insurance Department at:

**California Department of Insurance**
**Consumer Affairs Unit**
**300 South Spring Street, 9th Floor, South Tower**
**Los Angeles, California 90013**
**Telephone: 1-800-927-4357 or 213-897-8921 (out of state)**

When contacting your agent, company or the Insurance Department, please have your policy number available.

G8018CA (02-14)                                                                                                    Page 1 of 1

Private Client

# PERSONAL EXCESS LIABILITY POLICY

**Crestbrook Insurance Company**
Home Office: One Nationwide Plaza • Columbus, Ohio 43125
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A stock company wholly owned by Nationwide Mutual Insurance Company

CRESTBROOK INSURANCE COMPANY

## *Insuring Agreement*

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements, relying on the facts the named **Insured** has given **us.** Various provisions in this policy restrict or exclude coverage. Read the entire policy carefully to determine **your** rights and duties, and what is and is not covered. **We** have no duty to provide coverage unless there has been full compliance with **Policy Conditions.** In return, the named **Insured** will pay the premium and fees, and comply with all policy provisions.

## *Definitions*

1.  **"We," "Us,"** and **"Our"** refer to the company shown in the Declarations as issuing and providing this insurance.

2.  **"You"** and **"Your"** refer to the named **Insured** shown in this policy who resides at the **Residence Premises.**

    These terms also mean **your** spouse who resides in the same household.

    If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:

    a.  The end of ninety (90) days following the spouse's change of residency;

    b.  The effective date of another policy listing the spouse as a named **Insured;** or

    c.  The end of the policy period.

3.  **"Aircraft"** means any machine or device capable of atmospheric flight, except models.

4.  **"Biological Deterioration or Damage"** means damage or decomposition, breakdown, and/or decay of man-made or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

5.  **"Bodily Injury"** means bodily harm, including resulting sickness, disease, or death. **Bodily Injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

6.  **"Business"** includes:

    a.  Trade, profession, occupation, or employment including self-employment, farming or ranching, other than **Incidental Business** performed on a full-time, part-time or temporary basis; and

    b.  Other activities performed for monetary or other compensation, except the following;

        (1) Volunteer activities for which no monetary or other compensation is received other than reimbursement for expenses incurred to perform the activity;

        (2) Providing home day care services for:

            (a) Which no monetary or other compensation is received. A mutual exchange of home care services is not considered compensation; or

            (b) A relative of an **Insured.**

7.  **"Business Property"** means:

    a.  A premises owned, rented, leased, or held for the purpose of conducting a **Business;** and

    b.  A residential premises an **Insured** owns or controls for the purpose of renting or holding for rental to others.

8.  **"Contamination or Pollution"** means any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

    a.   Solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

    b.   Vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

    c.   Fuel oil and other petroleum products; or

    d.   Any other waste materials or other irritants, contaminants or pollutants.

9.    **"Damages"** means the sum required to satisfy a claim, whether settled or agreed to in writing by **us** or resolved by judicial process or review.

10.    **"Defense Costs"** means payments allocated to a specific claim or **Suit we** investigate, settle or defend, including but not limited to fees charged by any lawyer or law firm retained, court costs, experts' fees, court reporter fees, copying charges, and the cost of appeal.

11.    **"Discrimination"** means a violation of a person's civil rights with respect to race, color, national origin, religion, gender, marital status, age, sexual orientation or preference, physical or mental condition, or any other protected class or characteristic established by any federal, state or local statutes, rules or regulations.

12.    **"Employment Event"** means an allegation of, or **your** discovery of, a **Wrongful Employment Act** committed against **your Residence Employee** that has resulted in, or **you** reasonably believe is likely to result in, a civil action against **you** or any **Insured,** or a threat by any **Residence Employee** to disclose publicly that **you** or any **Insured** committed or allegedly committed a **Wrongful Employment Act.**

13.    **"Employment Event Management Firm"** means:

    a.   A professional public relations consulting firm;

    b.   A professional security consulting firm; or

    c.   A professional media management consulting firm;

    d.   An investigative firm; or

    e.   Law firm.

14.    **"Follow Form"** means that the coverage provided under this policy shall apply to the extent it is provided under **Required Underlying Insurance,** following the terms, definitions, conditions and exclusions of the **Required Underlying Insurance.** The **Damages** are payable are in excess of the **Required Underlying Insurance** which has been exhausted by payments of covered claims. If a provision of the **Required Underlying Insurance** policy conflicts with a provision of this policy, this policy's provision shall apply. In any event, this policy will not provide broader coverage than provided by the **Required Underlying Insurance** policy.

15.    **"Hovercraft"** means a self-propelled motorized ground effect vehicle which travels across land or water just above the surface on a cushion of air and includes, but is not limited to, flarecraft and air cushion vehicles.

16.    **"Incidental Business"** means a **Business** activity, conducted on the **Residence Premises:**

    a.   With gross revenues of less than $10,000 in any calendar year; and

    b.   With no employees of the **Incidental Business** subject to workers' compensation or similar disability laws; and

    c.   Which conforms to federal, state and local laws.

    **Incidental Business** also includes a farming operation on the **Residence Premises** involving:

    a.   Farm employees working less than 1,250 hours annually; and

    b.   Gross Annual Receipts from such farming operation of less than $25,000 during the policy period.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

17.  **"Incidental Worker"** means a person hired for casual employment by **you,** such as a babysitter or independent contractor, working less than fifteen (15) hours per week.

18.  **"Insured"** means:

    a.  **You** and residents of **your** household who are:

        (1)  **Your** relatives;

        (2)  Other persons under the age twenty-one (21) and in the care of **you** or **your** relatives;

        (3)  A civil partner by Civil Union or Registered Domestic Partnership filed and recognized by the state;

        (4)  A domestic partner living with **you** who is at least eighteen (18) years of age and sharing a common domestic life whose relationship resembles a mutually exclusive partnership such as that of a marriage; and

            (a)  Is financially interdependent with **you** and with whom **you** are jointly responsible for each other's common welfare;

            (b)  Is not a relative; and

            (c)  Has not been in a different domestic partner relationship within the last six months and is in the current domestic partner relationship for at least six consecutive months.

        A domestic partner does not include more than one person, a roommate or housemate whether sharing expenses equally or not, or one who pays rent to the **Insured.**

        (5)  A student enrolled in school full-time, as defined by the school, who was a resident of **your** household before moving out to attend school, provided the student is under the age of:

            (a)  Twenty-six (26) and **your** relative; or

            (b)  Twenty-one (21) and in **your** care or the care of **your** relative.

    b.  **Insured** also means:

        (1)  With respect to animals or **Watercraft** to which this policy applies, any person or organization legally responsible for these animals or **Watercraft** which are owned by **you** or any person included in 17.a. above. **Insured** does not mean a person or organization using or having custody of these animals or **Watercraft** in the course of any **Business** or without consent of the owner.

        (2)  With respect to a **Motor Vehicle, Recreational Motor Vehicle or Watercraft** to which this policy applies:

            (a)  Persons while engaged in **your** employ or that of any person included in 17.a. or 17.b. above; or

            (b)  Other persons using the vehicles described in (2) above with the consent of an **Insured.**

        (3)  Any person or organization with respect to their legal responsibility for acts or omissions of **you** as defined by 17.a. above.

    As used throughout the policy and attached endorsements, when the word "an" immediately precedes the word **"Insured,"** the words "an **Insured**" together mean one or more **Insureds.**

19.  **"Insured Location"** means:

    a.  The **Residence Premises;**

    b.  The part of any other premises, structures, and grounds used by **you** as a residence and shown in the policy; also any of these acquired by **you** during the policy period for **your** use as a residence;

    c.  A premises **you** use with premises defined in 18.a. or 18.b.;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

    d.  A part of a premises, not owned by an **Insured,** where an **Insured** is temporarily living.

    e.  Vacant land, other than farm land, owned by or rented to an **Insured;**

    f.  Land, other than farm land, owned by or rented to an **Insured;**

    g.  Cemetery plots or burial vaults of an **Insured;** or

    h.  A part of a premises rented on occasion to an **Insured** for purposes other than **Business.**

20.  **"Leased Worker"** means a person employed by a firm under, an agreement between **you** and the firm, to perform duties related to the conduct of **your** domestic, personal or **Incidental Business.**

21.  **"Listed Underlying Policy"** means an insurance policy identified on the Declarations which provides **Required Underlying Insurance** coverage, or its replacement. **You** must notify **us** of the replacement as soon as practicable.

22.  **"Motor Vehicle"** means:

    a.  An amphibious vehicle;

    b.  A motorized land vehicle or conveyance, including self-propelled motor homes and motorcycles, designed for travel on public roads or subject to motor vehicle registration;

    c.  Attached trailers or semi-trailers; or

    d.  Any vehicle while being towed by or carried by a **Motor Vehicle** defined in a., b., or c above.

    A motorcycle is defined to include:

    a.  A motorcycle;

    b.  A motor scooter;

    c.  A motorized bicycle;

    d.  A moped;

    e.  A trailbike over 350cc; or

    f..  Other similar motorized vehicles.

23.  **"Occurrence"** means:

    a.  An accident, including continuous or repeated exposure to the same general conditions, which results in **Bodily Injury** or **Property Damage;** or

    b.  An offense, which results in **Personal Injury.**

    With respect to **Personal Injury** covered under this policy and under any prior and subsequent policy(ies) issued by us to you, all continuous, repeated or related offenses shall be treated as a single offense and shall be deemed to occur at the time of the first offense.

    The **Occurrence** resulting in **Bodily Injury** or **Property Damage** must be during the policy period. The **Occurrence** resulting in the **Personal Injury** must be due to an offense committed during the policy period.

24.  **"Personal Injury"** means:

    a.  False arrest, false imprisonment, wrongful eviction, wrongful entry;

    b.  Wrongful detention or malicious prosecution;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

    c.   Libel, slander, defamation of character, or invasion of rights of privacy;

    d.   Shock, emotional distress or mental injury; or

    e.   Assault and battery when committed with the intent of protecting persons.

25.   **"Professional Services"** means services of a professional nature including but is not limited to:

    a.   Legal, accounting or advertising services;

    b.   Preparing, approving, or failing to prepare or approve:

        (1)  Maps;

        (2)  Drawings;

        (3)  Opinions;

        (4)  Reports;

        (5)  Surveys;

        (6)  Change orders;

        (7)  Designs; or

        (8)  Specifications;

    c.   Supervisory, inspection, engineering, or architectural services;

    d.   Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

    e.   Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;

    f.   Optometry or optical or hearing aid services, including but not limited to the prescribing, preparing, fitting, demonstrating or distributing of ophthalmic lenses and similar products or hearing aid services;

    g.   Body piercing services;

    h.   Pharmacological services; and

    i.   Any other health or therapeutic service, treatment, advice or instruction.

26.   **"Property Damage"** means physical injury to or destruction of tangible property. This includes any resulting loss of its use.

27.   **"Recreational Motor Vehicle"** means a motorized land vehicle not licensed or registered for use on public roads and used mainly off public roads. This includes unregistered trailbikes up to 350cc. These recreational vehicles operate solely on wheels, crawler-treads, belts, or similar mechanical devices. They are not propelled by airplane-type propellers or fans. This also includes land motorized land vehicle used solely to service and while on an **Insured Location.**

28.   **"Required Underlying Insurance"** means the **Required Underlying Insurance** shown on the Declarations.

29.   **"Residence Employee"** means a person employed by an **Insured,** including a **Temporary Worker** or **Leased Worker,** who performs duties in connection with maintenance or use of the **Residence Premises.** This includes household or domestic services or similar duties performed elsewhere not in connection with the **Business** of an **Insured.**

    **Residence Employee** does not include an **Incidental Worker** or independent contractors.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

30. **"Residence Premises"** means the one to four family dwelling, other structures and grounds identified by the location address as shown on the Declarations unless otherwise indicated.

31. **"Retained Limit"** means the greater of:

    a. The Minimum Required Underlying Limit shown on the Declarations; or

    b. The total limits of liability of all other insurance, other than insurance purchased specifically to be excess of this policy, for the **Required Underlying Insurance** shown in the Declarations.

32. **"Sexual Harassment"** means unwelcome sexual advances, request for sexual favors, or other verbal, visual or physical conduct of a sexual nature when such conduct:

    a. Is linked with a decision affecting an individual's employment;

    b. Interferes with an individual's job performance; or

    c. Creates an intimidating, hostile or offensive working environment for an individual.

33. **"Suit"** means a civil proceeding in which **Damages** because of an **Occurrence** to which this insurance applies are alleged. **Suit** includes, but is not limited to:

    a. An arbitration proceeding in which such **Damages** are claimed and to which the **Insured** must submit or does submit with **our** consent; or

    b. Any other alternative dispute resolution proceeding in which such **Damages** are claimed and to which the **Insured** submits with **our** consent.

34. **"Temporary Worker"** means a person who is furnished to **you** to substitute for a permanent **Residence Employee** on leave or to meet seasonal or short-term workload conditions. **Temporary Worker** does not include independent contractors.

35. **"Watercraft"** means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

36. **"Wrongful Employment Act"** means an actual or alleged employment related **Wrongful Termination, Sexual Harassment** or **Discrimination** that occurs during the policy period.

    With respect to Limited Employment Practices Liability Coverage under this policy and under any prior and subsequent policy(ies) issued by us to you, all continuous, repeated or related **Wrongful Employment Acts** shall be treated as a single **Wrongful Employment Act** and shall be deemed to occur at the time of the first **Wrongful Employment Act.**

37. **"Wrongful Termination"** means:

    a. Violation of your **Residence Employee's** rights, other than rights based on an express, written, or oral agreement of employment, when terminating an employee relationship; or

    b. Failure to exercise duty and care on the part of **you** or an **Insured** when terminating an employment relationship.

## Coverages

1. Excess Liability Coverage

   **We** will pay **Damages** an **Insured** is legally obligated to pay because of an **Occurrence** covered by this policy anywhere in the world:

   a. In excess of the **Retained Limit** when the **Occurrence** is covered by the **Required Underlying Insurance** shown on the Declarations; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

b.   From the first dollar of **Damages** when the **Occurrence** is not covered by **Required Underlying Insurance** as shown in the Declarations.

2.   Excess Uninsured and Underinsured Liability Coverage

This coverage is in effect only if an Excess Uninsured and Underinsured Liability Coverage Limit is shown on the Declarations.

In the case of death of the **Insured, we** will pay this amount to the legal representative of the estate of the deceased **Insured.**

a.   Excess Uninsured and Underinsured Motorists Protection Coverage

This coverage will **Follow Form,** except as modified herein.

**We** will pay the amount that an **Insured** is legally entitled to recover from the owner or driver of an uninsured/underinsured **Motor Vehicle** or **Recreational Vehicle. Damages** must result from an accident arising out of the ownership, maintenance, or use of the uninsured/underinsured **Motor Vehicle.**

The following conditions apply:

(1)   **You** must maintain an underlying insurance policy or policies described in the Declarations which provide uninsured/underinsured motorists coverage with the listed Minimum Required Underlying Limits.

(2)   **We** shall be liable only for **Damages** in excess of the sum of:

(a)   The amount received from **your** required underlying uninsured/underinsured motorists coverage; and

(b)   The total amount received because of the loss from, or on behalf of, the liable party;

but not less than the amount of such underlying limits.

(3)   This coverage will apply only to losses that are payable by **your** underlying coverage.

b.   Excess Uninsured/Underinsured Third Party Liability Coverage

**We** cover **Damages** that an **Insured** as defined in paragraph 18.a. of Definitions is legally entitled to recover from an uninsured/underinsured third party because of **Bodily Injury, Personal Injury** or **Property Damage** sustained by an **Insured** resulting from an **Occurrence** not excluded or limited by this policy had the third party had been the insured under this policy. However, this coverage does not apply to an **Occurrence** involving a **Motor Vehicle.**

An underinsured third party means a tortfeasor for which **Bodily Injury, Personal Injury** or **Property Damage** coverage, bonds, or other securities are in effect; however, their total amount is less than the limit of this coverage. See the Declarations for those limits.

3.   Limited Employment Practices Liability Coverage

This coverage is in effect only if a Limited Employment Practices Liability Coverage Limit is shown on the Declarations Page.

The total limit of our liability for the coverage provided in this policy shall be as shown in the Declarations.

**We** will pay the **Damages you** or an **Insured** are legally required to pay to compensate a **Residence Employee** arising out of a **Wrongful Employment Act** to which this insurance applies. This coverage is in excess of the sum of any applicable underlying policies whether collectible or not, and the Deductible for this coverage as shown in the Declarations. This coverage applies only if the number of **Residence Employees** on staff does not exceed five at the inception date of the Policy Period.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

## *Additional Coverages*

1. **EXCESS LIABILITY**

The additional coverages below are included in the Personal Excess Liability Limit and do not increase the limit of liability.

a. Limited Employers' Liability

**We** will provide coverage for **Damages** which are not payable under workers' compensation or similar laws and which an **Insured** is legally obligated to pay for **Bodily Injury** to **Residence Employee,** and subject to any applicable exclusions:

(1) In excess of the **Retained Limit** when the **Occurrence** is covered by the **Required Underlying Insurance** shown on the Declarations; or

(2) From the first dollar of **Damages** when the **Occurrence** is not covered by **Required Underlying Insurance** as shown in the Declarations.

b. Limited **Residence Premises Business** Liability

**We** cover **Damages** an **Insured** is legally obligated to pay for an **Occurrence** arising out of the physical condition of a residence shown on the Declarations Page when **Business, Incidental Business** or **Professional Services** are legally conducted by an **Insured** at that residence. This coverage applies only if:

(1) **You** do not have any employees conducting **Business** activities at **your** residence who are subject to workers' compensation or other similar disability laws;

(2) **You** are not a home day care provider; and

(3) There is no other valid and collectible insurance.

**We** will provide this coverage in excess of any underlying insurance that applies to these **Damages.** If no underlying coverage exists, **we** will pay total **Damages,** subject to, and not to exceed, the limits of liability as specified in the Declarations Page of this policy.

c. Coverage for Rented or Borrowed **Motor Vehicles**

**We** cover **Damages** an **Insured** is legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **Occurrence** during the Policy Period resulting from an **Insured's** use of a rented or borrowed **Motor Vehicle,** provided the rental or loan does not exceed forty-five (45) days.

**We** will provide this coverage in excess of any underlying insurance that applies to these **Damages.** If no underlying coverage exists, **we** will pay total **Damages,** subject to, and not to exceed, the limits of liability specified in the Declarations Page of this policy.

d. Newly Acquired **Motor Vehicles** and **Watercraft**

(1) **We** cover **Damages** an **Insured** is legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **Occurrence** resulting from newly acquired **Motor Vehicles,** providing **you** give **us** notice within thirty (30) days after **you** become the owner. **We** reserve **our** right not to continue to insure the **Motor Vehicle** once notified.

(2) **We** also cover **Damages** an **Insured** is legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **Occurrence** resulting from an **Insured's** use of newly acquired **Watercraft** providing **you** give **us** notice within thirty (30) days after **you** become the owner.

**We** reserve **our** right not to continue to insure the **Watercraft** once notified.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

**We** will provide this coverage in excess of any underlying insurance policy that applies to these **Damages.** If no underlying coverage exists, **we** will pay total **Damages,** subject to, and not to exceed, the limits of liability as specified in the Declarations Page of this policy.

e.  Rented or Borrowed **Watercraft**

**We** cover **Damages** an **Insured** is legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **Occurrence** during the Policy Period resulting from an **Insured's** use of a rented or borrowed **Watercraft,** provided the rental or loan does not exceed thirty (30) days and the non-owned Watercraft is less than forty (40) feet.

**We** will provide this coverage in excess of any underlying insurance that applies to these **Damages.** If no underlying coverage exists, **we** will pay total **Damages,** subject to, and not to exceed, the limits of liability specified in the Declarations Page of this policy.

2.  **LIMITED EMPLOYMENT PRACTICES LIABILITY**

**Employment Event Fund**

**We** cover reasonable fees and necessary expenses incurred by an event management firm for services performed to minimize potential loss as a result of an **Employment Event.** This coverage applies only if:

a.  The **Employment Event** arises from a **Wrongful Employment Act** committed during the policy period; and

b.  The **Employment Event** is reported to **us** as soon as practicable but in no event later than thirty (30) days after **you** first contact an event management firm regarding the **Employment Event.**

Prior written approval from **us** is required for this coverage to apply to fees and expenses incurred with any **Employment Event Management Firm.**

The most **we** will pay are the fees and expenses of the **Employment Event Management Firm** until they have advised us that the **Employment Event** no longer exists or $25,000, whichever is less. The most **we** will pay is $25,000 regardless of the number of **Employment Events** occurring during the policy period. This limit is in addition to the Limited Employment Practices Liability limit stated on the Declarations Page. This coverage is not subject to a deductible and applies unless otherwise excluded.

3.  **DEFENSE COVERAGE AND CLAIMS EXPENSE**

a.  As it applies to Excess Liability or Limited Employment Practices Liability:

(1) **We** will defend a **Suit** against an **Insured,** with attorneys of **our** choice, resulting from an **Occurrence** or **Wrongful Act** covered by this policy and where:

(a)  The underlying insurance has been exhausted by payment of claims; or

(b)  No underlying insurance applies;

even if the allegations of the **Suit** are groundless, false or fraudulent. We provide this defense at **our** expense.

Additionally, when we defend, **we** will pay:

(a)  All court costs and expenses on judgments assessed against any **Insured.**

(b)  Reasonable expenses incurred by an **Insured** at **our** request, up to a total of $10,000 for assisting **us** in the investigation or defense of a claim or **Suit.**

(c)  The cost of bail bonds required of an **Insured** because of a covered loss.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

(d) All premiums on bonds required in a **Suit we** defend, but not for bond amounts more than the coverage amount (**we** need not apply for or furnish any bond).

(e) Expenses incurred by **us.**

(f) Interest on the entire judgment against an **Insured** which accrues after entry of the judgment and before **we** pay or tender, or deposit in court, that part of the judgment which does not exceed the amount of coverage.

(g) All prejudgment interest awarded against an **Insured** on that part of the judgment **we** pay or offer to pay. **We** will not pay any prejudgment interest based on that period of time after **we** make an offer to pay the amount of coverage.

In jurisdictions where **we** are prevented from defending an **Insured** for a covered loss because of laws or other reasons, **we** will pay any expenses incurred with **our** prior consent for the **Insured's** defense.

b.   As it applies to Excess Liability, the following also applies:

**We** have the right, but not the duty, to defend any **Suit** against an **Insured** seeking **Damages** covered under Excess Liability under this policy and also covered by the **Required Underlying Insurance** shown on the Declarations. **We** may join, at **our** own expense, with the **Insured** or any insurer who provides coverage for an **Occurrence** in a **Listed Underlying Policy** in the investigation, defense and settlement of any claim or **Suit** that **we** believe may require payment under this policy. However, **we** will not contribute to costs and expenses incurred by any other insurer who provides coverage in a **Listed Underlying Policy,** and which an insurer of such underlying policy(s) is obligated to provide.

c.   When **Our** Duty to Defend Ends

(1)  As it applies to Excess Liability Coverage:

(a) Our duty to defend any **Insured** against any claim or **Suit** arising out of any one **Occurrence** ends when the amount **we** have paid in **Damages** for that **Occurrence** equals the Excess Liability Policy Limit shown on the Declarations Page.

(b) Payments under this provision, Defense Coverage and Claim Expense, except a settlement payment, are in addition to the Personal Excess Liability Policy Limit shown on the Declarations Page.

(2)  As it applies to Limited Employment Practices Liability Coverage:

(a) **Our** duty to defend any **Insured** against any claim or **Suit** arising out of any one **Wrongful Employment Act** or a series of related **Wrongful Employment Acts** ends when the amount **we** have paid in **Damages** for that **Wrongful Employment Act** equals the Limited Employment Practices Liability limits shown on the Declarations Page.

(b) Payments under Defense Coverage and Claim Expense, except a settlement payment, are in addition to the Excess Liability Policy Limit shown on the Declarations Page.

d.   Expanded Defense Coverage

If **we** are defending an **Insured** for any **Suit** seeking covered **Damages, we** will reimburse **you,** up to $10,000, for the reasonable expenses for a law firm of **your** choice to review and consult on the defense covered under this policy.

This coverage only applies to expenses incurred after the date **our** defense has begun and any applicable Deductible has been applied.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

## *Exclusions*

A.  As it applies to all coverages, this insurance does not apply to liability, **Bodily Injury, Property Damage, Personal Injury, Defense Costs** or any other cost or expense arising out of:

1.  The ownership, maintenance, use, loading or unloading of, entrustment or negligent supervision by an **Insured** of, or statutorily imposed liability of an **Insured** relating to the use of:

    a.  Any motorized land vehicle (other than a **Motor Vehicle** or **Recreational Motor Vehicle**) owned, leased or regularly used by any **Insured; or**

    b.  Any **Motor Vehicle** or **Recreational Motor Vehicle** unless insurance is provided by a **Listed Underlying Policy** at the time of the **Occurrence.**

        This exclusion does not apply to covered **Damages** as provided under Rented or Borrowed **Motor Vehicle** and Newly Acquired **Motor Vehicle** Additional Coverages.

    c.  A **Watercraft** unless insurance is provided by a **Listed Underlying Policy** at the time of the **Occurrence.**

        This exclusion does not apply to covered **Damages** as provided under Rented or Borrowed **Watercraft** and Newly Acquired **Watercraft** Additional Coverages.

    d.  An **Aircraft,** except **Bodily Injury** to an **Residence Employee** of the **Insured** is covered if it results from his or her employment by the **Insured.**

    e.  Airboats, air cushion or similar type **Watercraft** and **Hovercraft.**

2.  Any **Motor Vehicle** or **Recreational Motor Vehicle**, or **Watercraft** while:

    a.  Used to carry persons or property for a fee or compensation;

    b.  Used on a regular basis for retail or wholesale delivery, including but not limited to pizza, magazine, newspaper and mail delivery; or

    c.  Rented to others.

    Exclusion 2.a. does not apply to **Motor Vehicles** used in shared-expense pools. Exclusion 2.b. does not apply to occasional or part time **Business** pursuits of an **Insured** under age twenty-one (21) years old (age twenty-four [24] if a full-time student).

3.  The use of any **Motor Vehicle, Recreational Motor Vehicle,** or **Watercraft** for participation in or practice for an organized competitive event, including but not limited to:

    a.  Racing contest or event;

    b.  Speed contest or event; or

    c.  In practice or preparation for any prearranged or organized racing or speed contest or event. While used in performance testing that is done on a closed road, or a race track, or a testing facility environment where there is no competition;

    Performance testing is when an **Insured** uses any **Motor Vehicle, Recreational Motor Vehicle, Watercraft** to:

    a.  Test its performance in speed or handling; or

    b.  Test or practice driver skills.

    Performance testing does not apply to student-driver training activities an **Insured** participates in to obtain that person's state issued learner's permit or driver's license. Performance testing also does not apply to driver training activities an **Insured** participates in to complete that person's state sanctioned courses in motor vehicle accident prevention, defensive driving, driver improvement, or similarly designed courses.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

This exclusion does not apply to sailboats that are covered under this policy.

4.  Any person's use of a **Motor Vehicle, Recreational Motor Vehicle** or **Watercraft** without a reasonable belief that that person is entitled to do so.

5.  The use of a **Motor Vehicle** or **Recreational Vehicles,** or a temporary substitute for such **Motor Vehicle** or **Recreational Vehicle,** by any **Insured** while employed or otherwise engaged in the business of:

    a.  Selling;

    b.  Repairing;

    c.  Servicing;

    d.  Storing;

    e.  Parking;

    f.  Testing; or

    g.  Delivering, except as provided in Exclusion 2.

    vehicles designed for use mainly on public highways.

6.  An **Insured's Business Property** or **Business** pursuits, investment activity or any activity intended to realize a profit for either an **Insured** or others;

    However, this exclusion does not apply to:

    a.  Volunteer work for an organized charitable, religious or community group;

    b.  **Incidental Business** activity;

    c.  Limited **Residence Premises Business** Liability Coverage;

    d.  Residences held for rentals which are listed on the Declarations Page;

    e.  Occasional or part time **Business** pursuits of an **Insured** under age twenty-one (21) years old (age twenty-four [24] if a full-time student);

    f.  An office, school, studio, barber or beauty shop if coverage is provided in **your** homeowners policy for the **Residence Premises.** Coverage will **Follow Form;** or

    g.  Home care services provided by or at the direction of an **Insured** on or from the **Residence Premises** if coverage is provided in **your** homeowners policy for the **Residence Premises.** Coverage will **Follow Form.**

7.  An **Insured's** performing or failure to perform **Professional Services,** or for **Professional Services** for which any **Insured** is legally responsible or licensed.

8.  Any criminal, willful, fraudulent, dishonest, intentional or malicious act or omission by any person, or the gaining of any profit or advantage to which an **Insured** is not entitled. **We** will not cover any amount for which the **Insured** is not financially liable or which is without legal recourse to the **Insured. We** also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, **Property Damage,** or **Bodily Injury.** This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to **Bodily Injury** if the **Insured** acted with reasonable force to protect any person or property.

9.  The sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A. Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs. This exclusion does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

10. Any act of terrorism or by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear or biological weapon is a warlike act, even if accidental.

11. An **Occurrence** for which the **Insured** is covered by a nuclear energy liability policy. This applies even if the limits of that policy have been exhausted.

12. Asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos.

13. Electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy.

14. Exposure to, or ingestion, inhalation or absorption of, lead or lead compounds.

15. Radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

16. Any **Contamination or Pollution.**

    This exclusion also applies to any claims, **Suit,** loss, cost or expense arising out of any required testing, monitoring, clean up, removal, containment, or other actions to determine or respond to the effects of **Contamination or Pollution.**

    This exclusion does not apply to **Bodily Injury** arising out of routine lawn and garden care of an **Insured Location.**

17. Any assessment charged against an **Insured** as a member of an association, corporation, community of property owners, condominium or cooperative association.

18. The types of contracts or agreements:

    a.   Made in conjunction with any **Insured's Business;**

    b.   Unwritten contracts or agreements; or

    c.   In which the liability of others is assumed after a loss.

19. Any **Insured's** obligation, including benefits required to be paid, under any of the following laws:

    a.   Workers' compensation;

    b.   Unemployment compensation;

    c.   Occupational disease;

    d.   Disability benefits;

    e.   Jones Act or General Maritime Law;

    f.   Federal Longshoremen's and Harbor Workers' Compensation Act; or

    g.   Any similar law.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

20. Any claim for uninsured motorists, underinsured motorists, uninsured boater, underinsured boater, uninsured third party liability, or underinsured third party liability unless a limit is shown for the Excess Uninsured/Underinsured Liability Coverage on the Declarations;

21. Any no-fault insurance benefits.

22. An **Insured** transmitting a communicable disease.

23. **Property Damage** to:

a. Property owned by an **Insured,** which includes costs or expenses incurred by an **Insured** or others at the direction of an **Insured** to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an **Insured Location;** or

b. Property owned by others when an **Insured** has physical control of it, or agreed to be responsible for it.

24. Any **Damages** for any covered person's financial guarantee of the financial performance of any **Insured,** other individual or organization.

25. Any of the following:

a. Judgments;

b. Costs;

c. Attorneys fees; or

d. Claims

against an **Insured** for punitive or exemplary damages.

26. **Biological Deterioration or Damage.**

27. The **Insured** knowingly permitting or failing to take action to prevent the illegal consumption of alcohol beverages by underage persons on a premises owned or controlled by any **Insured.**

28. Animals of known savage nature, living ordinarily at large and not by custom devoted to the service of mankind. This includes but is not limited to bears, wolves, lions, tigers and venomous snakes.

29. **Bodily Injury** or **Personal Injury** to an **Insured** as defined in Definitions 17.a. This exclusion includes any actions brought against **you** or any other **Insured** to repay or pay a portion of **Damages** with another person who may be obligated to pay **Damages** because of **Bodily Injury** or **Personal Injury** to an **Insured.**

B. As it applies to all coverages except Limited Employment Practices Liability, this insurance does not apply to liability, **Bodily Injury, Property Damage, Personal Injury, Defense Costs** or any other cost or expense arising out of:

1. Any **Wrongful Employment Act,** including but not limited to **Wrongful Termination** of employment.

2. Any actual, alleged or threatened **Discrimination.**

3. Any actual, alleged or threatened:

a. Sexual misconduct, molestation or harassment;

b. Corporal punishment; or

c. Sexual, physical or mental abuse.

4. Any **Insured's** acts, errors or omissions as an officer or member of the board of directors of any corporation or organization. This exclusion does not apply to an **Insured's** actions for a non-profit corporation or organization, or a condominium or cooperative association provided the **Insured** receives no compensation other than expenses.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

5. **Personal Injury** resulting from:

   a.  Willful violation of a law by or with the consent of the **Insured;**

   b.  The **Insured's** activities in advertising or broadcasting;

   c.  Libel, slander, defamation or violation of rights of privacy if:

      (1) Made by or with the consent of the **Insured;** and

      (2) Made with knowledge of their falsity; or

      (3) The injurious activities began before this policy's effective date.

   d.  A violation of right of privacy if:

      (1) Made by or with the consent of the **Insured;** or

      (2) The injurious activities began before this policy's effective date.

C.  As it applies to Limited Employment Practices Liability the following also applies:

This insurance does not provide coverage for liability, **Defense Costs** or any other cost or expense arising out of:

1.  **Property Damage** or **Bodily Injury;**

2.  Or for fines, penalties, taxes, punitive, exemplary or multiplied **Damages,** except where required by law; or losses for or arising out of matters which may be deemed uninsurable according to the law under which the Policy is construed;

3.  A **Wrongful Employment Act** for which the **Insured** is obligated to pay **Damages** by reason of an express, written or oral agreement of employment;

4.  Or for that part of any claim or **Suit** seeking non-monetary relief including, but not limited to, injunctive relief, declaratory relief, disgorgement, job reinstatement, or other equitable remedies;

5.  A violation of any of the responsibilities, obligations or duties imposed by the Employment Retirement Income Security Act of 1974, Fair Labor Standards Act (except the Equal Pay Act), the Workers' Adjustment and Retraining Notification Act, National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, the Immigration Reform & Control Act of 1986, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto to any similar provisions of any federal, state, local or foreign statutory law or common law; or

6.  Any obligation under the Social Security Act including, but not limited to, any claim for lost or diminished Social Security benefits, including any amendments to that law, or similar federal, state or local statutory or common law.

## *Policy Conditions*

1.  Excess Liability Coverage

    The most **we** will pay for all claims for **Personal Injury, Bodily Injury** or **Property Damage** for any one **Occurrence** is the Personal Excess Liability Policy Limit shown on the Declarations Page. This insurance applies separately to each **Insured** against whom a claim is made or **Suit** is brought but, **we** will not pay more than this amount in any one **Occurrence** regardless of how many coverages, claims, people, or **Motor Vehicles** are involved in the **Occurrence.** There is no limit to the number of **Occurrences** during the Policy Period for which claims may be made.

2.  Excess Uninsured and Underinsured Liability Coverage

    Subject to the Personal Excess Liability Policy Limit above, the most **we** will pay in covered **Damages** under this coverage for any one **Occurrence** is the Excess Uninsured and Underinsured Liability Coverage Limit shown on

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

the Declarations Page, regardless of the number or type of **Motor Vehicles** or **Residence Premises** listed on the Declarations Page. **We** will not pay more than this amount in any one **Occurrence** regardless of how many claims, people or **Motor Vehicles** are involved in the **Occurrence.** There is no limit to the number of **Occurrences** during the Policy Period for which claims may be made.

3.  Limited Employment Practices Liability

    a.  Limits

        (1)  Annual Aggregate

        The most **we** will pay for the sum of all losses for all claims under this coverage is the limit shown as the Annual Aggregate for Limited Employment Practices Liability shown on the Declarations page. Each loss payment **we** make for such claims reduces the Annual Aggregate by the amount of the payment. This reduced limit will then be the amount available for any further claims for the remaining portion of the Policy Period.

        (2)  Each **Wrongful Employment Act**

        Subject to the Annual Aggregate Limit, the most **we** will pay for all losses for all claims because of any one **Wrongful Employment Act** is the "Each **Wrongful Employment Act**" limit shown for Limited Employment Practices Liability shown on the Declarations page.

        This insurance applies separately to each **Insured** against whom a claim is made or **Suit** is brought, regardless of how many claims or people are involved, but **we** will not pay more than the Annual Aggregate nor more than the each **Wrongful Employment Act** limit for any one **Wrongful Employment Act.**

    b.  Deductible

        The Deductible amount shown for Employment Practices Liability on the Declarations page shall be subtracted from the amount of **Damages** as a result of any one **Wrongful Employment Act,** regardless of how many claims or people are involved.

        The limits will not be reduced by the application of the Deductible amount. Notice of claim or **Suit** and **our** right to investigate and negotiate any such claim or **Suit,** apply irrespective of the application of the Deductible amount.

4.  Maintenance of **Required Underlying Insurance**

    **You** and other **Insureds** must maintain insurance in full effect for the Minimum Required Underlying Limits shown on the Declarations, for the Required Underlying Insurance shown on the Declarations.

    If, at the time of an **Occurrence,** the underlying insurance that is applicable to the **Occurrence** is not fully collectible because:

    a.  **You** or another **Insured** have failed to maintain such Minimum Required Underlying Limits for **Required Underlying Insurance;**

    b.  The limits, terms or conditions of such **Required Underlying Insurance** have been reduced or restricted for specific exposures;

    c.  The insurer of such **Required Underlying Insurance** is bankrupt, insolvent or in receivership; or

    d.  **You** or an **Insured** have failed to meet **your** contractual responsibilities under such **Required Underlying Insurance;**

    then **we** will pay only as though the **Required Underlying Insurance** was in effect for the Minimum Required Underlying Limits stated on the Declarations Page.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

5.   Other Insurance. Coverage under this policy is:

   a.   Excess over any other valid and collectible insurance, except in the case where the other insurance is written specifically as excess over the limits of this policy.

   b.   Primary if the limits of **Required Underlying Insurance** shown on the Declarations, or other available insurance, have been exhausted due to payment of loss covered there under.

   c.   Excess if the limits of **Required Underlying Insurance** shown on the Declarations, or other available insurance, have been reduced due to payment of loss covered thereunder.

6.   **Your** Duties After a Loss

   In the event of an **Occurrence, Wrongful Employment Act,** or wrongful act which is likely to involve this policy, or if **you** or any other **Insured** under this policy are sued or a claim is made against **you** in connection with an **Occurrence, Wrongful Employment Act** or wrongful act which may be covered under this policy:

   a.   **You** must notify **us** or **our** agent as soon as practicable of the time, place and other circumstances of the **Occurrence, Wrongful Employment Act** or wrongful act and provide **us** with the names and addresses of any persons injured and any available witnesses.

   b.   An **Insured** must:

      (1)   Provide **us** with any suit papers and any other documents which will help **us** defend the **Insured;** and

      (2)   Assist and cooperate with **us** in the conduct of the defense by helping us:

         (a)   To make settlement;

         (b)   To enforce any right of contribution or indemnity against any person or organization who may be liable to an **Insured;**

         (c)   By attending hearings and trials; and

         (d)   To secure and give evidence and obtain the attendance of witnesses.

7.   Loss Payment

   **We** will begin to make payment for an **Occurrence** covered by this policy when the amount, or amounts, in excess of the **Required Underlying Limits** has been actually paid by or on behalf of the **Insured,** and:

   a.   **Our** liability has been determined by agreement between the **Insured,** claimant and **us;** or

   b.   A final judgment is entered against the **Insured** resulting from an actual trial.

      Claim for payment must be made within twelve (12) months after **our** liability is determined. If additional claims are filed due to the same **Occurrence,** payment will be made within thirty (30) days after the **Insured** gives **us** proper proof.

8.   Appeals

   If an **Insured** or other insurer elects not to appeal a judgment exceeding the **Retained Limit** or other insurance, **we** may do so. **We** will pay the cost and interest incidental to the appeal. **We** will not be liable for more than the limit shown on the Declarations plus the incidental cost and interest.

9.   Assistance and Cooperation

   **We** are not required to settle or defend a claim or **Suit** against an **Insured** which is covered by **Required Underlying Insurance. We** do have a right to join in the defense and control a claim or **Suit** which will likely require **us** to pay. When **we** join, **we** and the **Insured** will cooperate in good faith.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

10. Subrogation

When **we** pay, an **Insured's** rights of recovery from anyone else become **ours** up to the amount **we** paid. This includes rights to claims against any other insurer which failed in its obligation to provide insurance applying to the **Occurrence.** The **Insured** must protect these rights and help **us** enforce them.

11. Policy Transfer

Interest in this policy may not be transferred without **our** written consent. If an **Insured** dies, becomes bankrupt or insolvent, the **Insured**'s legal representative is covered for the rest of the policy term. The representative is only covered while acting in that capacity.

12. **Suit** Against **Us**

a. No action shall be brought against **us** unless there has been full compliance with all the terms under this policy.

b. No one will have the right to join **us** as a party to any action against an **Insured.**

c. Also, no action can be brought against **us** until the obligation of such **Insured** has been determined by final judgment or agreement signed by **us.**

d. **We** will also not be liable for the **Insured's** share of any payment due because of a settlement or judgment for which the **Insured** is responsible under any deductible provision.

13. How **Your** Policy May Be Changed

a. Any part of this policy which may be in conflict with statutes of the state in which this policy is issued is hereby amended to conform.

b. Any **Insured** will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c. A waiver or change of a part of this policy must be in writing by **us** to be valid.

d. The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium during the policy period.

e. The named **Insured** has a duty to notify **us** as soon as possible of any change which may affect the premium or the risk under this policy.

14. Renewal

This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:

a. Renewal will be in accordance with the policy forms, rules, rates and rating plans in use by **us** at the time.

b. All premiums, premium installment payments and fees must be paid when due.

c. Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **Insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us.**

15. Cancellation

**We** may cancel this policy as stated below by letting **you** know in writing of the date cancellation takes effect. This cancellation notice will be mailed to **you** at **your** mailing address shown in the Declarations.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

Proof of mailing will be sufficient proof of notice.

a.  When **you** have not paid the premium, **we** may cancel at any time by letting **you** know at least ten (10) days before the date cancellation takes effect.

b.  When this policy has been in effect for less than sixty (60) days and is not a renewal with **us, we** may cancel for any reason by letting **you** know at least ten (10) days before the date cancellation takes effect.

c.  When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal with **us, we** may cancel by letting **you** know at least thirty (30) days before the date cancellation takes effect.

16.  Nonrenewal

**We** may elect not to renew this policy. **We** may do so by mailing to **you** at **your** mailing address shown in the Declarations, written notice at least thirty (30) days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

17.  Other Termination Provisions

a.  When this policy is cancelled, the premium from the period from the date of cancellation to the expiration date will be refunded pro rata.

b.  If the return premium is not refunded with the notice of cancellation or when this policy is returned to **us, we** will refund it within a reasonable time after the date cancellation takes effect.

18.  Bankruptcy

Bankruptcy or insolvency of:

a.  An **Insured** will not relieve **us** of **our** obligations under this policy; nor will it cause this policy to become primary in the event the **Insured** providing underlying coverage is not able to satisfy the **Retained Limit,** either because of insufficient insurance or insufficient personal assets.

b.  Another insurance carrier providing underlying coverage will not cause the insurance provided by this policy to replace such underlying coverage. The coverage provided by this policy will apply as if the underlying coverage was valid and collectible.

19.  Concealment or Fraud

a.  This policy was issued in reliance on the information **you** provided at the time of **your** application for insurance coverage. **We** may void this policy, deny coverage under this policy, or, at **our** election, assert any other remedy available under applicable law, if you, or any **Insured** seeking coverage under this policy, knowingly or unknowingly concealed, misrepresented or omitted any material fact or engaged in fraudulent conduct at the time the application was made or at any time during the policy period.

b.  **We** may void this policy, deny coverage for an accident or loss, or at our election, assert any other remedy available under applicable law, if any **Insured** or any other person seeking coverage under this policy has knowingly or unknowingly concealed or misrepresented any material fact or engaged in fraudulent conduct in connection with the filing or settlement of any claim.

c.  No person or organization who engages in fraudulent conduct in connection with the application process, an accident or filing a claim, or engages in any material misrepresentation regarding the issuance of this policy shall be entitled to receive any payment under this policy at any time.

20.  Severability of Insurance

This insurance applies separately to each **Insured.** This condition does not increase **our** limit of liability for one **Occurrence.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY

21. **You** may take over control of any outstanding claim or **Suit** previously reported to **us** only if **we** both agree that **you** should, or if a court orders **you** to do so. If **your** limits are exhausted, **we** will notify **you** of all outstanding claims or **Suits** that **you** can take over control of the defense. **We** will help transfer control to you. **We** shall take whatever steps are necessary to continue the defense of any outstanding claim, and avoid a default judgment during the transfer of control to you. If **we** do so, **we** shall not waive or give up any of **our** rights. **You** shall pay all reasonable expense **we** incur for taking such steps after the limits have been exhausted.

22. Optional Payment of Premium in Installments

    The first named **Insured** may pay the premium for this policy in installments, under terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment service charge. **Your** agent can provide more information.

23. Non-sufficient Funds and Late Payment Charges

    The company reserves the right to impose a fee for any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments, or if the premium is not paid by the due date. This is under the terms and conditions approved where required by the Department of Insurance.

24. Policy Period and Territory

    The Policy Period is stated on the Declarations Page. This policy applies to:

    a. An **Occurrence** which takes place anywhere in the world; or

    b. A **Wrongful Employment Act** which takes place anywhere in the world, but only if the claim is made and a **Suit** is brought for such **Wrongful Employment Act** or wrongful act in the United States of America, its territories or possessions.

25. Additional Insured—Non Occupant

    An additional insured may be named in this policy. The additional insured is protected for liability for the ownership, maintenance, or use of the **Residence Premises.** This provision does not increase the amount of insurance.

26. Assignment

    No one covered under this policy may assign or turn over any right or interest in regard to the policy without **our** written consent.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2012

CRESTBROOK INSURANCE COMPANY                                    PERSONAL EXCESS LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CALIFORNIA AMENDATORY ENDORSEMENT

Coverage is subject to all terms and conditions of the policy, except as changed by this endorsement.

I.    Throughout this policy, the term spouse includes an individual registered under California law as a domestic partner with the **Named Insured** shown in the declarations.

II.   In the **Policy Conditions** section of the policy, subsection 15. **Cancellation** is replaced by the following:

15.  **Cancellation**

**We** may cancel this policy as stated below by letting **you** know in writing of the date cancellation takes effect. This cancellation notice will be mailed to **you** at **your** mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

a.  When **you** have not paid the premium, **we** may cancel at any time by letting **you** know at least ten (10) days before the date cancellation takes effect.

b.  When this policy has been in effect for less than sixty (60) days and is not a renewal with **us, we** may cancel for any reason by letting **you** know at least twenty (20) days before the date cancellation takes effect.

c.  When this policy has been in effect for sixty (60) days or more, or at any time if it is a renewal with **us, we** may cancel by letting **you** know at least thirty (30) days before the date cancellation takes effect.

III.  In the **Policy Conditions** section of the policy, subsection 16. **Nonrenewal** is replaced by the following:

16.  **Nonrenewal**

**We** may elect not to renew this policy. **We** may do so by mailing to **you** at **your** mailing address shown in the Declarations, written notice at least forty five (45) days before the end of the policy period. Proof of mailing will be sufficient proof of notice.

IV.  In the **Policy Conditions** section of the policy, subsection 23. **Non-sufficient Funds and Late Payment Charges,** the following section is added:

**You** agree that if **you** make initial payment by check, draft, electronic funds transfer (EFT) or other remittance, the coverage afforded under this policy is conditioned on payment to **us** by the financial institution. If the payment is not honored by the financial institution, **we** will void this policy back to the inception date and **you** will not have coverage.

**All other provisions of this policy apply.**

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2011

CRESTBROOK INSURANCE COMPANY                                          PERSONAL EXCESS LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.

## CRESTBROOK PERSONAL EXCESS LIABILITY PROTECTION

For an additional premium the following coverages apply.

1.  **ADDITIONAL COVERAGES,** 3. **DEFENSE COVERAGE AND CLAIMS EXPENSE,** d. **Expanded Defense Coverage** is replaced with the following:

    If **we** are defending an **Insured** for any **Suit** seeking covered **Damages, we** will reimburse **you,** up to $250,000, for the reasonable expenses for a law firm of **your** choice to review and consult on **our** defense covered under this policy.

    This coverage only applies to expenses incurred after the date **our** defense has begun and any applicable Deductible has been applied.

    This coverage does not apply to Family Trust Management Practices—Defense within Limits Coverage or Not for Profit Directors and Officers Liability Coverage Defense Inside of Limits coverage.

2.  **Family Trust Management Practices Defense within Limits Coverage** is added as follows:

    **Family Trust Management Practices Defense within Limits Coverage**

    1.  Definitions

        The following definitions are added with respect to the **Family Trust Management Practices Defense within Limits Coverage** being added by this endorsement:

        **"Annual Aggregate"** means the limit of liability available for this coverage during the policy period as shown in this endorsement.

        **"Family Trust"** means a trust for a person, who is related to **you** by blood, marriage, adoption, or for which **you** are a legal guardian. It does not include **your Family Trust** where **you** are the sole beneficiary.

        **"Wrongful Act"** means any act, error, or omission in the rendering of, or failure to render services as a trustee of the **Family Trust.** As respects the **Family Trust Management Practices Defense Within Limits Coverage** provided under this endorsement and under any prior or subsequent endorsement(s) issued by **us** to **you,** all continuous, repeated or related **Wrongful Acts** shall be treated as a single **Wrongful Act** and shall be deemed to occur at the time of the first **Wrongful Act.**

    2.  Coverage

        **We** will pay on **your** behalf **Damages** that **you** become legally obligated to pay for damage arising out of a **Wrongful Act.**

    3.  Exclusions

        This insurance does not provide coverage for liability, **Defense Costs** or any other cost or expenses arising out of:

        a.  **Insured** gaining any personal profit or advantage to which the **insured** was not legally entitled, including misappropriation, commingling, deduction or withholding of funds or other property;

b.   performance or non-performance of any specific security, real estate investment or other investment upon which any **Insured** has based a recommendation representation or opinion to buy or sell; or

c.   an intentional, criminal or fraudulent act.

4.   Limit of Liability

a.   The most we will pay for the sum of all **Damages** and **Defense Costs** under this coverage is $250,000 which represents the **Annual Aggregate.** Each payment made for **Damages** and **Defense Costs** will reduce the **Annual Aggregate** by the amount of the payment. The reduced limit will then be the amount available for any further claims for the remaining portion of the policy period.

b.   Subject to the **Annual Aggregate,** the most we will pay for the sum of all **Damages** and **Defense Costs** because of any one **Wrongful Act** is $250,000 (**Wrongful Act** Limit).

c.   This insurance applies separately to each Insured against whom a claim is made or **Suit** is brought but, regardless of how many claims or people are involved, we will not pay more than the **Annual Aggregate** nor more than the each **Wrongful Act** Limit for any one **Wrongful Act.**

5.   Defense Coverage and  **Defense Costs**

**We** will defend a **Suit** against an **Insured,** with attorneys of **our** choice, resulting from a **Wrongful Act** covered hereunder even if the allegations of the **Suit** are groundless, false or fraudulent; and we will pay associated **Defense Costs.**

Our duty to settle or defends ends when we have used up the applicable limit of insurance in the payment of **Defense Costs** and/or **Damages.**

6.   Conditions

The following Condition is amended with respect to the **Family Trust Management Practices Defense within Limits Coverage** being added by this endorsement:

24.   Policy Period and Territory

This coverage applies only to a **Wrongful Act** committed during the policy period show on the Declarations page. Coverage provided by this section applies only to a **Wrongful Act** committed in:

a.   The United States of America, its territories or possessions;

b.   Puerto Rico; or

c.   Canada.

3.   **ADDITIONAL COVERAGES,** 2. **LIMITED EMPLOYMENT PRACTICES LIABILITY Employment Event Fund** is replaced by the following:

2.   **EXCESS LIABILITY AND LIMITED EMPLOYMENT PRACTICES LIABILITY**

Crisis Management Coverage

**We** cover the reasonable and necessary fees or expenses that **you** incur up to $250,000 for services provided by a **Crisis Management Firm** to mitigate potential **Damages** or injury to the reputation of an **Insured** caused by an **Occurrence** or **Wrongful Employment Act** covered by this policy provided that:

a.   **you** report the **Occurrence** or **Wrongful Employment Act** to us as soon as possible, but not later than thirty (30) days from when it occurred; and

b. **you** obtain written approval to engage this **Crisis Management Firm** from **us** before incurring any fees or expenses; and

c. the **Occurrence** or **Wrongful Employment Act** is committed during the policy period.

**Crisis Management Firm** means:

a. A professional public relations consulting firm;

b. A professional security consulting firm; or

c. A professional media management consulting firm.

This coverage does not apply to Family Trust Management Practices—Defense within Limits Coverage or Not for Profit Directors and Officers Liability Coverage Defense Inside of Limits coverage.

4. **ADDITIONAL COVERAGES,** e. Rented or Borrowed **Watercraft** is replaced by the following:

**We** cover **Damages** an **Insured** is legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **Occurrence** during the Policy Period resulting from an **Insured's** use of a rented or borrowed **Watercraft,** provided the rental or loan does not exceed forty-five (45) days.

**We** will provide this coverage in excess of any underlying insurance that applies to these **Damages.** If no underlying coverage exists, **we** will pay total **Damages,** subject to, and not to exceed, the limits of liability specified in the Declarations Page of this policy.

**All other provisions of the Personal Excess Liability policy apply.**